1

2

3

4

5

6

7

8

9                                         HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

17

DAVID WICHSER and KATHI
WICHSER, husband and wife, and the
marital community composed thereof,

                    Plaintiffs,

          v.

SAFECO INSURANCE COMPANY
OF ILLINOIS, a foreign insurer,

                    Defendant.

CASE NO. C15-738 RAJ

ORDER

18

19      This matter comes before the Court on Defendant's Motion for Partial Summary

20   Judgment.  Dkt. # 32.[1]  Plaintiffs oppose the motion.  Dkt. # 38.  For the reasons that

21   follow, the Court GRANTS Defendant's motion.

22

23

24

25

26

27

_____

[1] The Court strongly disfavors footnoted legal citations.  Footnoted citations serve as an end-run around page limits and formatting requirements dictated by the Local Rules. *See* Local Rules W.D. Wash. LCR 7(e).  Moreover, several courts have observed that "citations are highly relevant in a legal brief" and including them in footnotes "makes brief-reading difficult."  *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2014 WL 289924, at *1 (D. Ariz. Jan. 24, 2014).  The Court strongly discourages the parties from footnoting their legal citations in any future submissions. *See Kano v. Nat'l Consumer Co-op Bank*, 22 F.3d 899-900 (9th Cir. 1994).

ORDER- 1

1    **I.    BACKGROUND**

2        This dispute arises out of Plaintiffs' automobile policy with Safeco Insurance

3    Company of Illinois ("Safeco").  The Plaintiffs' policy included Personal Injury

4    Protection (PIP) with a $10,000 limit and Underinsured Motorist coverage with a limit of

5    $50,000 per person or $100,000 per accident.  Dkt. # 33-1, at p. 6.  At issue in this

6    dispute is a claim by Plaintiffs for UIM coverage and Safeco's handling of that claim.

7        On June 29, 2009, plaintiff Kathi Wichser was injured when Larry Kellie failed to

8    yield and struck Ms. Wichser's car in an intersection.  Dkt. # 1-2 (Complaint), ¶ 3.2.  On

9    June 18, 2010, Safeco informed Ms. Wichser's counsel, Jeffrey Keane, that Safeco

10   exhausted its payments under the PIP coverage.  Dkt. # 33-1, at p. 76.  Safeco followed

11   up with Mr. Keane on October 11, 2010 to reiterate that it had paid $10,000 to Ms.

12   Wichser under the PIP coverage and asked that Mr. Keane update Safeco about

13   settlement efforts between Ms. Wichser and Mr. Kellie's insurance carrier.  *Id.* at 78. On

14   April 22, 2013, Mr. Keane informed Safeco of a potential settlement with Allstate

15   Insurance, Mr. Kellie's carrier, and asked Safeco if it wished to "buy out" the policy.  *Id.*

16   at 82.  Safeco declined, and Ms. Wichser settled with Allstate for the full policy limit of

17   $100,000.  *Id.* at pp. 87, 107.

18       On May 21, 2014, Mr. Keane, on behalf of Ms. Wichser, officially demanded the

19   $50,000 per person UIM policy limit.  Dkt. # 40-1, at pp. 12-16.  Included with the

20   demand were Ms. Wichser's medical records, a summary detailing the history and nature

21   of her bills, and copies of her bills.  *Id.* at p. 14.  In addition, Mr. Keane included a list of

22   treatment dates and associated bills, totaling $31,663.81.  *Id.*  Mr. Keane further

23   explained that the chart and exhibits to the demand letter "indicat[e] that treatment is

24   from the date of the accident through December, 2012, [but] Ms. Wichser's treatment is

25   ongoing, even to today.  We have not updated Ms. Wichser's medical records and will do

26   so should this matter proceed to litigation."  *Id.*  In a footnote, Mr. Keane stated that

27

1  "[f]or purposes of this demand letter, we estimate $150 per visit based on prior billings."

2  *Id.* at 15.

3       Safeco reviewed the demand letter and attached medical records and bills, and

4  concluded that "Ms. Wichser was fully compensated by the underlying carrier,

5  Encompass insurance; which carried $100,000.00 in liability limits." *Id.* at 18.[2]  Safeco

6  then waived its PIP subrogation claim. *Id.*  Safeco remained open to reviewing any new

7  information from Ms. Wichser. *Id.*

8       On September 22, 2014, Mr. Keane presented Safeco with a 20 Day Notice

9  Regarding Violations of the Insurance Fair Conduct Act (IFCA). *Id.* at pp. 20-21.  The

10 IFCA Notice alleged that Safeco violated Washington Administrative Code (WAC) 284-

11 30-330 by not effectuating a prompt, fair, and equitable settlement and by forcing Ms.

12 Wichser to litigate for her settlement. *Id.* at p. 21.  Safeco responded to the IFCA Notice

13 on October 27, 2014, explaining that it evaluated the information that Mr. Keane had

14 previously provided "and concluded that [Ms. Wichser] was fully compensated by the

15 underlying settlement with the tortfeasor." *Id.* at p. 24.  Safeco declined arbitration in

16 favor of litigation, which was an option contemplated by the policy. *Id.*  "Safeco

17 remain[ed] open to negotiation and [was] willing to consider additional information." *Id.*

18 at p. 25.

19      In October 2014, Safeco attempted, through T-Scan Corporation, to obtain signed

20 stipulations from Ms. Wichser that would grant Safeco access to her medical records and

21 bills.  Dkt. # 33-1, at pp. 124-132.  Ms. Wichser, through Mr. Keane, refused to sign the

22 stipulations because Mr. Keane did "[not] see a point, Safeco [had] denied the claim." *Id.*

23 at p. 132.  Safeco explained that it needed additional information to understand Mr.

24

25 _____

26 [2] In an undated Bodily Injury Evaluation Worksheet, Safeco appears to have reviewed the
   medical records and calculated the associated costs.  Dkt. # 33-1, at pp. 141-145.  However,
27 Safeco's calculations came in below Mr. Keane's by a few hundred dollars. *Id.* at 144.

1  Keane's claim that there were nearly $40,000 in medical bills in light of the current

2  production which totaled around $31,000.  *Id.*

3         On January 28, 2015, Safeco wrote to Mr. Keane regarding the outstanding

4  medical bills.  *Id.* at pp. 134-135.  Safeco explained that it had attempted to obtain signed

5  stipulations from Ms. Wichser that would grant Safeco access to the medical bills on

6  thirteen different occasions during the period of October 31, 2015 to January 13, 2015.

7  *Id.*  Safeco alerted Mr. Keane to the provision in the policy that required insureds to

8  cooperate with Safeco during an investigation or settlement, including authorizing Safeco

9  to obtain medical reports and other pertinent records.  *Id.* at 135.  Safeco reiterated that it

10  was open to reviewing any new information from Ms. Wichser that would aid it in its

11  valuation of the claim.  *Id.*

12         Receiving no response, Safeco wrote once more to Mr. Keane explaining that

13  Safeco believed there to be "a disagreement on the value of th[e] case and it does appear

14  [Safeco does] not have all the records and billings and would like this additional

15  information to re-evaluate [Ms. Wichser's] injury claim."  *Id.*  at p. 137.  Safeco restated

16  that it remained open to reviewing any new information that Ms. Wichser wished Safeco

17  to consider.  *Id.*  Mr. Keane did not respond, and on May 7, 2015, Safeco again wrote to

18  Mr. Keane inquiring about the signed stipulations for authorization to Ms. Wichser's

19  medical bills.  *Id.* at p. 139.  However, unbeknownst to Safeco, Ms. Wichser and her

20  husband had filed suit against Safeco in King County Superior Court on May 6, 2015.

21  Dkt. # 1-2.

22         On May 11, 2015, Safeco removed the Wichsers' lawsuit to federal court.  Dkt. #

23  1.  The parties began to engage in discovery, and, on September 3, 2015, Ms. Wichser

24  signed the authorizations that would allow Safeco to access her medical records.  Dkt. #

25  40-1, at pp. 33-36.  On November 18, 2015, Safeco informed Mr. Keane that there were

26  issues in obtaining all of the required records and bills and requested assistance in

27  obtaining the remaining records and bills.  Dkt. # 32-3, at pp. 27-28.

1    On January 7, 2016, Safeco requested that Ms. Wichser appear for an independent

2 medical examination, a condition required in her policy.  *Id*. at pp. 35-36; *see also* Dkt. #

3 33-1, at p. 38.  The parties could not agree on an examination, and, in June 2016, the

4 Court intervened.  Dkt. # 43.  The Court ordered Ms. Wichser to appear for an

5 examination with Dr. Zietak no later than June 30, 2016.  *Id.*

6    Safeco now moves this Court to dismiss Plaintiffs' extra-contractual claims.  Dkt.

7 # 32.

8    **II.    LEGAL STANDARD**

9    Summary judgment is appropriate if there is no genuine dispute as to any material

10 fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

11 56(a).  The moving party bears the initial burden of demonstrating the absence of a

12 genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

13 Where the moving party will have the burden of proof at trial, it must affirmatively

14 demonstrate that no reasonable trier of fact could find other than for the moving party.

15 *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where

16 the nonmoving party will bear the burden of proof at trial, the moving party can prevail

17 merely by pointing out to the district court that there is an absence of evidence to support

18 the non-moving party's case.  *Celotex Corp.*, 477 U.S. at 325.  If the moving party meets

19 the initial burden, the opposing party must set forth specific facts showing that there is a

20 genuine issue of fact for trial in order to defeat the motion.  *Anderson v. Liberty Lobby,*

21 *Inc.*, 477 U.S. 242, 250 (1986).  The court must view the evidence in the light most

22 favorable to the nonmoving party and draw all reasonable inferences in that party's favor.

23 *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

24    However, the court need not, and will not, "scour the record in search of a

25 genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see*

26 *also White v. McDonnell-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court

27 need not "speculate on which portion of the record the nonmoving party relies, nor is it

1  obliged to wade through and search the entire record for some specific facts that might

2  support the nonmoving party's claim").  The opposing party must present significant and

3  probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident &*

4  *Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  Uncorroborated allegations and "self-

5  serving testimony" will not create a genuine issue of material fact.  *Villiarimo v. Aloha*

6  *Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. V. Pac Elec.*

7  *Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

8  **III.    DISCUSSION**

9      A.  Insurance Bad Faith

10      In Washington, "an insurer has a duty of good faith to its policyholder and

11  violation of that duty may give rise to a tort action for bad faith."  *Smith v. Safeco Ins.*

12  *Co.*, 78 P.3d 1274, 1276 (Wash. 2003).  Like other torts, establishing a claim for bad faith

13  requires proof of duty, breach, proximate cause, and damages.  *Id.*  "In order to establish

14  bad faith, an insured is required to show the breach was unreasonable, frivolous, or

15  unfounded."  *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998).  "Claims of

16  bad faith 'are not easy to establish and an insured has a heavy burden to meet.'"  *Bayley*

17  *Constr. v. Great Am. E & S Ins. Co.*, 980 F. Supp. 2d 1281, 1290 (W.D. Wash. 2013)

18  (quoting *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 329 (Wash. 2002)).  Courts must place

19  the insurer's actions in context when deciding whether they were unreasonable, frivolous,

20  or unfounded.  *Berkshire Hathaway Homestate Ins. Co. v. SQI, Inc.*, 132 F. Supp. 3d

21  1275, 1288 (W.D. Wash. 2015) (citing *Keller v. Allstate Ins. Co.*, 915 P.2d 1140, 1145

22  (Wash. App. 1996)).  "Violation of Washington's insurance regulations is evidence of

23  bad faith."  *Id.* at 1252 (citing *Coventry Associates v. Am. States Ins. Co.*, 274, 961 P.2d

24  933, 935 (1998)).

25      Typically, insurers are under a heightened duty to consider the interests of their

26  insureds on equal footing with their own.  *Schreib v. Am. Family Mut. Ins. Co.*, 129 F.

27  Supp. 3d 1129, 1135 (W.D. Wash. 2015) (citing *Am. States Ins. Co. v. Symes of*

1  *Silverdale, Inc.*, 78 P.3d 1266, 1270 (Wash. 2003)).  But "[t]his enhanced duty does not

2  exist in a UIM case, in which the insurer often stands in the shoes of the tortfeasor, can

3  assert any defense to liability that the tortfeasor had, and thus finds itself in an adversarial

4  relationship with its own insured."  *Id.* (citing *Ellwein v. Hartford Acc. & Indem. Co.*, 15

5  P.3d 640, 647 (Wash. 2001)).  Still, while the insurer is free to be adversarial in the

6  context of assuming the uninsured driver's role in response to its insured's claims, it is

7  not free to be adversarial in the context of fulfilling its policy obligations or other duties

8  that apply to it as an insurer.  *See Edmonson v. Popchoi*, 228 P.3d 780, 785 (Wash. Ct.

9  App. 2010).

10      "A claim of bad faith cannot succeed when the insurer 'acts honestly, bases its

11  decision on adequate information, and does not overemphasize its own interest.'"

12  *Beasley*, 2014 WL 1494030, at *7 (quoting *Werlinger v. Clarendon Nat. Ins. Co.*, 120

13  P.3d 593, 595 (Wash. Ct. App. 2005)).  A bad faith claim cannot succeed without proof

14  of harm.  *Id.*  "Because bad faith is a question of fact, '[a]n insurer is entitled to a

15  dismissal on summary judgment if, after viewing the facts in the insured's favor, a

16  reasonable person could only conclude that its actions were reasonable.'"  *Id.* (quoting

17  *Werlinger*, 120 P.3d at 595).  Summary judgment is also appropriate in instances where a

18  reasonable person could only conclude the insured was not harmed.  *Id.*

19      Here, Ms. Wichser contends that Safeco acted in bad faith by failing to reasonably

20  investigate and value the claim.

21      *1. Reasonable Investigation*

22      An insurer must reasonably investigate an insured's claim.  *Anderson v. State*

23  *Farm Mut. Ins. Co.*, 2 P.3d 1029, 1035 (Wash. Ct. App. 2000).  This requirement is set

24  forth in the WAC.  "Refusing to pay claims without conducting a reasonable

25  investigation" is an unfair or deceptive act.  WAC 284-30-330(4).  It is also unfair to

26  "[f]ail to affirm or deny coverage of claims within a reasonable time after fully completed

27  proof of loss documentation has been submitted."  WAC 284-30-330(5).  Further, it is

1   unfair to delay an investigation by making duplicative document requests to the insured.

2   WAC 284-30-330(11).

3       Ms. Wichser's claim as to unreasonableness stems from her belief that Safeco had

4   enough information to pay out her UIM limit of $50,000. [3]  However, Safeco only had

5   records through 2012, and these records amounted to just over $31,000.  Even though

6   Ms. Wichser claimed ongoing treatment, no records to indicate this were sent to Safeco

7   despite Safeco's continued efforts to obtain the information.  Furthermore, Mr. Keane did

8   not include a claim for or evidence that supported damages beyond the medical bills,

9   such as economic loss or loss of consortium on the part of Mr. Wichser.  Therefore,

10  Safeco was not unreasonable in failing to acknowledge this in its valuation.

11      The record appears clear that Safeco attempted on many occasions to obtain

12  information that would raise its valuation but was unsuccessful.  Safeco was not

13  unreasonable in its conclusion that Ms. Wichser's bills amounting to $31,000 were

14  covered by the $110,000 she received from the tortfeasor's carrier and her own PIP

15  coverage.

16      B.  Insurance Fair Conduct Act

17      Under the Insurance Fair Conduct Act (IFCA), an insurance policyholder who has

18  been "unreasonably denied a claim for coverage or payment of benefits by their insurer"

19  may file an action for damages.  RCW 48.30.015.  An insurer's alleged violation of a

20  WAC provision is not actionable under the IFCA unless it is accompanied by an

21  unreasonable denial of coverage or payment: "By its plain language, IFCA gives an

22  insured no right to sue solely for a violation of a Washington insurance regulation.  The

23  right to sue arises solely from an unreasonable denial of a claim for coverage or payment

24  of benefits." *Seaway Props., LLC v. Fireman's Fund Ins. Co.*, 16 F. Supp. 3d 1240, 1255

25

26

27  [3] Ms. Wichser cites heavily from her insurance expert, Mr. Richard Maloney.  However, his
    opinion appears to be that of an attorney espousing many legal conclusions throughout his report.

1 (W.D. Wash. 2014).  Offering or paying a settlement that is not based on a reasoned

2 evaluation of what the insurer knew or should have known at the time about the insured's

3 claim is an unreasonable denial of coverage under the IFCA.  *Morella v. Safeco Ins. Co.*

4 *of Ill.*, No. C12-0672RSL, 2013 WL 1562032, at *3 (W.D. Wash. 2013).  But if there is a

5 delay in payment or coverage "due to a dispute over the amount owed, the delay alone

6 does not constitute a denial of payment under IFCA." *Beasley v. State Farm Mut. Auto.*

7 *Ins. Co.*, No. C13-1106RSL, 2014 WL 1494030, at *6 (W.D. Wash. 2014).

8       In support of their IFCA claim, Plaintiffs allege that Safeco violated various WAC

9 provisions, including WAC 284-30-330(6) and (7).  Dkt. # 1-2, at ¶ 4.2.2.  Specifically,

10 Plaintiffs assert that Safeco violated the WAC by "not attempting to in good faith

11 effectuate prompt, fair and equitable settlements of claims in which liability has become

12 reasonably clear" and forcing her to resort to litigation to recover the amounts due to her

13 under the policy.  WAC 284-30-330(6), (7); *see also* Dkt. # 1-2, at ¶ 4.2.2.  Of course, an

14 alleged violation of these provisions is not enough to assert a claim under the IFCA

15 unless the alleged actions also include an unreasonable denial of coverage.

16       The Court finds the IFCA analysis similar to the bad faith analysis above.  That is,

17 the Court does not find that a reasonable jury would conclude from the evidence that

18 Safeco "unreasonably denied a claim for coverage." RCW 48.30.015.  Again, the record

19 shows that Safeco was presented with documents indicating a claim of about $31,000

20 with no evidence of economic loss or loss of consortium.  Despite Safeco's best efforts to

21 obtain additional documentation, it was ultimately unsuccessful in receiving enough

22 information to reevaluate the claim.  Based on the information before it, Safeco could

23 reasonably conclude that Ms. Wichser's $110,000 settlement was enough to cover her

24 claim of $31,000.  Even if Ms. Wichser, through her lawyer, claimed that there were

25 ongoing expenses, no such evidence or documentation was offered to Safeco.

26

27

ORDER- 9

1      C.  <u>Fiduciary and Quasi-Fiduciary Duties</u>

2      Plaintiffs' claim for breach of fiduciary duties fails as a matter of law.  No

3 Washington court has recognized a claim for breach of fiduciary duty by an insured. *See*

4 *Baker v. Phoenix Ins. Co.*, 2014 WL 241882, at *3 (W.D. Wash. 2014) (collecting cases).

5 The relationship between an insured and the insurer is not a true fiduciary relationship.

6 *Safe Ins. Co. of Am. v. Butler*, 118 Wash. 2d 383, 389 (Wash. 1992) ("[S]omething less

7 than a true fiduciary relationship exists between the insurer and the insured").  RCW

8 48.01.030 requires that an insurer and insured act in good faith and preserve the integrity

9 of insurance, but it does not support a claim that a fiduciary relationship exists between

10 insurer and insured.

11      D.  <u>Negligence</u>

12      In Washington, it is not entirely clear whether a plaintiff can pursue

13 simultaneously a cause of action for bad faith claims handling and a cause of action for

14 negligent claims handling in the UIM context.  "An action for bad faith handling of an

15 insurance claim sounds in tort." *Safeco Ins. Co. of Am. v. Butler*, 118 Wash. 2d 383, 389

16 (Wash. 1992).  "Claims of insurer bad faith 'are analyzed applying the same principles as

17 any other tort: duty, breach of that duty, and damages proximately caused by any breach

18 of duty." *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.*, 161 Wash. 2d 903,

19 916 (Wash. 2007).  Seeing as Plaintiffs have not argued their negligence claim any

20 differently than their insurance bad faith claim, it appears that Safeco is correct in finding

21 that Plaintiffs' "negligence claim is simply an alternative way to plead bad faith."  Dkt. #

22 32, at p. 12, *Zander v. New Hampshire Indem. Co.*, No. C05-5154FDB, 2006 WL

23 2243035, at *4 (W.D. Wash. 2006) (finding that the plaintiff's negligence claim is

24 indistinguishable from her bad faith claim.).  Accordingly, for the same reasons that

25 Safeco did not act in bad faith when reasonably construing the evidence to value Ms.

26 Wichser's claim, it similarly did not act negligently in dealing with her claim.

27

1

## IV.   CONCLUSION

2      For all the foregoing reasons, the Court GRANTS Defendant's motion for partial

3   summary judgment.  Dkt. # 32.  Therefore, the Court dismisses Plaintiffs' claims for

4   insurance bad faith, violation of the IFCA, breach of fiduciary duties, and negligence.

5   This matter will proceed on Plaintiffs' contractual claim.

6

7      Dated this 22nd day of November, 2016.

8

9

10   _____

11   The Honorable Richard A. Jones
     United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

ORDER- 11